In the
United States Court of Appeals
for the Sixth Circuit

_____

**JOSHUA GRUBB,**

*Appellant,*

v.

**COOKIE CREWS, et al.,**

*Appellees.*

_____

Appeal from the United States District Court for the
Western District of Kentucky
Honorable Joseph H. McKinley Jr., No. 5:24-CV-P69-JHM

_____

**BRIEF FOR APPELLANT**

_____

Daniel S. Harawa
Adam B. Murphy
New York University School of Law
Federal Appellate Clinic
245 Sullivan Street, Fifth Floor
New York, NY 10012
(212) 998-6420
daniel.harawa@nyu.edu

Samuel Weiss
Rights Behind Bars
1800 M Street, N.W.
Washington, DC 20001
(202) 455-4399
sam@rightsbehindbars.org

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................... ii

TABLE OF AUTHORITIES ................................................................. iii

STATEMENT OF THE ISSUES ............................................................ 1

STATEMENT OF JURISDICTION ....................................................... 1

STATEMENT IN SUPPORT OF ORAL ARGUMENT ......................... 1

STATEMENT OF THE CASE .............................................................. 2

STANDARD OF REVIEW ................................................................. 7

SUMMARY OF THE ARGUMENT ................................................... 8

ARGUMENT ..................................................................................... 11

I.   The District Court Erred When It Dismissed Mr. Grubb's Eighth and Fourteenth Amendment Claims as Frivolous. ..................................................... 11

   A.   The District Court Reversibly Erred By Concluding Mr. Grubb's Eighth Amendment Claim Was Frivolous. .................................................... 11

   B.   The District Court Reversibly Erred By Concluding Mr. Grubb's Fourteenth Amendment Claim Was Frivolous. ............................................... 16

II.   The District Court Erred When It Dismissed Mr. Grubb's Complaint Without First Allowing Him Leave to Amend. .................................................. 22

CONCLUSION ................................................................................. 25

CERTIFICATE OF COMPLIANCE ................................................... 26

CERTIFICATE OF SERVICE ............................................................ 27

DESIGNATION OF RELEVANT COURT DOCUMENTS .................. 28

TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bazzetta v. McGinnis,*
430 F.3d 795 (6th Cir. 2005) ................................................................16

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ...............................................................................7

*Berndt v. Tennessee,*
796 F.2d 879 (6th Cir. 1986) ................................................................23

*Blackmore v. Kalamazoo Cty.,*
390 F.3d 890 (6th Cir. 2004) ................................................................16

*Brown v. Matauszak,*
415 F. App'x 608 (6th Cir. 2011).........................................................23

*Burkeen v. A.R.E. Accessories, LLC,*
758 F. App'x 412 (6th Cir. 2018).........................................................22

*Corselli v. Coughlin,*
842 F.2d 23 (2d Cir.1988) ....................................................................14

*Davis v. Ayala,*
576 U.S. 257 (2015) .............................................................................18

*Erickson v. Pardus,*
551 U.S. 89 (2007) .................................................................................7

*Estelle v. Gamble,*
429 U.S. 97 (1976) .................................................................................7

*Farmer v. Brennan,*
511 U.S. 825 (1994) .......................................................................11, 16

*Finley v. Huss,*
102 F.4th 789 (6th Cir. 2024)..........................................18, 19, 20, 21

*Foman v. Davis*,
371 U.S. 178 (1962) ........................................................................22

*Francis v. Altiere*,
491 F. App'x 539 (6th Cir. 2012).....................................................13

*Franklin v. Franklin*,
2000 WL 687434 (6th Cir. May 16, 2000).........................................13

*Glossip v. Gross*,
576 U.S. 863 (2015) ........................................................................18

*Gordon v. Faber*,
973 F.2d 686 (8th Cir. 1992)............................................................14

*Grinter v. Knight*,
532 F.3d 567 (6th Cir. 2008) .............................................................7

*Harden-Bey v. Rutter*,
524 F.3d 789 (6th Cir. 2008) ..................................................9, 10, 18

*Hudson v. Palmer*,
468 U.S. 517 (1984) ........................................................................11

*Janikowski v. Bendix Corp.*,
823 F.2d 945 (6th Cir. 1987).............................................................22

*Jones v. Bock*,
549 U.S. 199 (2007) ...................................................................13, 23

*Kentucky Dep't of Corr. v. Thompson*,
490 U.S. 454 (1989) ...................................................................16, 17

*Knop v. Johnson*,
977 F.2d 996 (6th Cir. 1992).............................................................13

*LaFountain v. Harry*,
716 F.3d 944 (6th Cir. 2013).............................................................23

*Lewis v. Lane*,
    816 F.2d 1165 (7th Cir. 1987) ...............................................................14

*M.L.B. v. S.L.J.*,
    519 U.S. 102 (1996) .............................................................................20

*Mitchell v. Maynard*,
    80 F.3d 1433 (10th Cir. 1996) .......................................................13, 14

*Moore v. City of East Cleveland*,
    431 U.S. 494 (1977) .............................................................................20

*Newberry v. Silverman*,
    789 F.3d 636 (6th Cir. 2015) ........................................................10, 22

*Overton v. Bazzetta*,
    539 U.S. 126 (2003) .............................................................................15

*Palakovic v. Wetlze*,
    854 F.3d 209 (3d Cir. 2017) .........................................................17, 18

*Palmer v. Million*,
    208 F.3d 214, 2000 WL 125874 (6th Cir. 2000)...................................24

*Perry v. Michigan Dep't of Corr.*,
    2023 WL 8593602 (6th Cir. Dec. 8, 2023)............................................7

*Perry v. Spencer*,
    94 F.4th 136 (1st Cir. 2024) .................................................................19

*Rashada v. Fagel*,
    2024 WL 1367436 (6th Cir. Apr. 1, 2024)............................................23

*Rhodes v. Chapman*,
    452 U.S. 337 (1981) .........................................................................9, 15

*Sampson v. Berks Cty. Prison*,
    171 F. App'x 382 (3d Cir. 2006).........................................................13

*Sandin v. Conner*,
515 U.S. 472 (1995) ........................................................................17

*Smith v. Bush*,
2024 WL 242349 (6th Cir. Jan. 19, 2024)..................................13, 14

*Spencer v. Bouchard*,
449 F.3d 721 (6th Cir. 2006) ......................................................13, 14

*Thomas-El v. Smith*,
2024 WL 1023749 (6th Cir. Mar. 6, 2024) .......................................21

*Walker v. Mintzes*,
771 F.2d 920 (6th Cir. 1985) .........................................................9, 12

*Wilson v. Seiter*
501 U.S. 294 (1991) ...........................................................................13

*Wilson v. Williams*,
961 F.3d 829 (6th Cir. 2020) .............................................................11

**Statutes**

28 U.S.C. § 1291 .......................................................................................1

28 U.S.C. § 1331 .......................................................................................1

28 U.S.C. § 1915A ...............................................................1, 5, 7, 8, 14

42 U.S.C. § 1983 .............................................................................1, 4, 8

**Rules**

Fed. R. Civ. P. 15 ................................................................................23, 24

Fed. R. Evid. 201....................................................................................6

**Other Authorities**

Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1483 (3d
ed., June 2024 update)................................................................22, 23

Eddyville, KY Weather History for Feb. 2024, available at https://www.wunder-ground.com/history/monthly/us/ky/kuttawa/KKYEDDYV16/date/2024-2-8. .....2

Kentucky Correctional Policy and Procedures, *Recreation and Inmate Activities*, 22.2, available at https://corrections.ky.gov/About/cpp/Docu-ments/22/CPP%2022.2.pdf. .................................................................19

Kentucky Correctional Policy and Procedures, *Inmate Visits*, 16.1, available at https://corrections.ky.gov/About/cpp/Documents/16/CPP%2016.1%20Effec-tive%205-15-24%20LRC.pdf. ..........................................................19

Kentucky Correctional Policy and Procedures, *Inmate Personal Property*, 17.1., available at https://corrections.ky.gov/About/cpp/Docu-ments/17/CPP%2017.1.pdf...................................................................20

Kentucky Correctional Policy and Procedures, *Religious Programs*, 23.1, available at https://corrections.ky.gov/About/cpp/Documents/23/CPP%2023.1 %20Eff%204-4-23.pdf ........................................................................20

Kentucky Department of Corrections Religion Reference Manual, available at https://corrections.ky.gov/About/Documents/LRC%20Filings/2021/Reli-gion%20Reference%20Manual%206%20080%20eff%204-4-23.pdf................20

United States District Court for the Western District of Kentucky, *Instructions for Filing a Prisoner Civil Rights Complaint Under 42 U.S.C. § 1983 or* Bivens v. Six Unknown Fed. Narcotics Agents *in the United States District Court for the Western District of Kentucky*, Form A, *available at* https://www.kywd.uscourts.gov/sites/kywd/files/forms/1983_Pris-oner_Packet_2.pdf ...............................................................................4

## STATEMENT OF THE ISSUES

I.     Did the district court err in dismissing Joshua Grubb's pro se complaint as frivolous under 28 U.S.C. § 1915A, when his complaint, liberally construed, plausibly alleges violations of his Eighth and Fourteenth Amendment rights?

II.    Did the district court err in dismissing Mr. Grubb's pro se complaint without first allowing him leave to amend?

## STATEMENT OF JURISDICTION

On April 12, 2024, Joshua Grubb filed a pro se complaint under 42 U.S.C. § 1983 in the United States District Court for the Western District of Kentucky. The district court had jurisdiction under 28 U.S.C. § 1331. On May 24, 2024, the district court dismissed Mr. Grubb's complaint as frivolous under 28 U.S.C. § 1915A. Mr. Grubb filed a timely notice of appeal on June 13, 2024. This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT IN SUPPORT OF ORAL ARGUMENT

Mr. Grubb requests oral argument in this case. Oral argument would be beneficial because this case involves significant and complex questions of constitutional law, as well as questions of civil procedure. 6 Cir. R. 34(a).

For more than a year, Joshua Grubb was confined to the hole at the Kentucky State Penitentiary (KSP) on an "administrative control cycle." Compl., R.1, PageID # 4. During this time, Mr. Grubb was subjected to months of cold showers, including during the winter, when it was "cold at all times in the cell house." *Id.*, PageID # 5. Those showers, taken on days when the temperatures outside were below freezing,[1] made him sick and continued after he informed the prison administration that there was no hot water. *Id*. Mr. Grubb was also deprived of other basic necessities, had objects taken from him in violation of the prison's regulations, and was denied video visits throughout this entire period—further isolating him from his family and compounding the pernicious psychological effects of the hole. *Id*.

The hardships began when Mr. Grubb was first placed in solitary confinement on August 11, 2023. *Id.*, PageID # 4. On that day, a disciplinary hearing was allegedly held during which Mr. Grubb was referred to an administrative control cycle that was scheduled to expire by the end of August. *Id.* But three days before the

---

[1] This period includes February 2024, where Eddyville, Kentucky (the location of the prison, which sits on the Cumberland River), had temperatures as low as 18 and 19 degrees. *See* Eddyville, KY Weather History for Feb. 2024, available at https://www.wunderground.com/history/monthly/us/ky/kuttawa/KKYED-DYV16/date/2024-2-8.

expiration date, on August 28, 2023, Defendant Amy L. Fisher, the Unit Administrator, re-held Mr. Grubb's disciplinary hearing without his presence or knowledge.[2] *Id*. Defendant Fisher then extended Mr. Grubb's administrative control cycle without providing him with any notice or opportunity to be heard. *Id*. Mr. Grubb remained held in the hole. *Id*.

On December 5, 2023, Mr. Grubb's administrative control cycle was extended 90 more days and came with this command: participate in a "transition" program that was also in Restrictive Segregated Housing or "remain in the hole indefinitely." *Id.* Confronted with that threat from Defendant Fisher and the other Unit Administrator, Defendant Lauren Massey, Mr. Grubb agreed to participate in the transition program but remained in the hole because of "inadequate space in the Transition Unit." *Id.*, PageID # 5.

While stuck in the hole, Mr. Grubb's administrative control was extended, once again, until at least June of 2024. *Id.*, PageID # 4. Although people confined to segregation "are to be given the chance to explain why [they should] be released off this administrative control status" every 30 days, the prison administration violated their own rule and refused to give Mr. Grubb any opportunity to be heard. *Id.*,

---

[2] The district court mistakenly referred to Defendant Amy L. Fisher as Lauren L. Fisher. *See* Op., R.7, PageID # 32.

PageID # 4–5. With no grievance process to turn to either, Mr. Grubb wrote numerous letters to prison administrators, including Kentucky Department of Corrections (KDOC) Commissioner Cookie Crews, KDOC Interim Deputy Commissioner Scott Jordan, KSP Interim Warden Laura Plappert, KSP Unit Administrator Lauren Massey, and KSP Unit Administrator Amy L. Fisher. *Id*. None of the Defendants provided any relief. *See id*.

On April 19, 2024, with no place left to turn, Mr. Grubb filed a pro se complaint, pursuant to 42 U.S.C. § 1983, in the Western District of Kentucky. He did so using Form A, which incarcerated people are required to use when filing civil rights suits in this district.[3] The space on Form A is limited: It provides less than two pages for plaintiffs to state the facts of their case; to explain how their constitutional rights were violated; to describe how each defendant violated their rights; and to set forth the dates when each event took place. *See* Compl., R.1, PageID # 4–5. Mr. Grubb managed to squeeze 14 paragraphs of facts onto those two pages, including the details above, and utilized every inch of space by continuing below the margin on the

---

[3] *See* United States District Court for the Western District of Kentucky, *Instructions for Filing a Prisoner Civil Rights Complaint Under 42 U.S.C. § 1983 or* Bivens v. Six Unknown Fed. Narcotics Agents *in the United States District Court for the Western District of Kentucky*, Form A, *available at* https://www.kywd.uscourts.gov/sites/kywd/files/forms/1983_Prisoner_Packet_2.pdf.

second page. *Id.* On Form A, Mr. Grubb also named the Defendants, in their individual and official capacities, and he sought money damages and injunctive relief to remedy the constitutional defects in the administrative control cycle.[4] *Id.*, PageID # 2, 3, 6.

The district court screened Mr. Grubb's complaint for frivolity pursuant to 28 U.S.C. § 1915A. Op., R.7, PageID # 32. The district court understood that Mr. Grubb was raising an Eighth Amendment conditions-of-confinement claim and a Fourteenth Amendment procedural due process claim, but then dismissed them both.[5] *Id.*, PageID # 35–38. With respect to the Eighth Amendment claim, the district court held that being deprived of "hot water for two months" was insufficient to state a claim. *Id.*, PageID # 36. The opinion omitted Mr. Grubb's factual allegation that he and other people had fallen ill as a result of the cold and did not consider the harms in their totality. For the procedural due process claim, the district court concluded that Mr. Grubb was not deprived of a protected liberty interest because "at the most, he will be in administrative segregation from August 2023 until June 2024." *Id.*, PageID # 38. In so holding, the court undercounted the time Mr. Grubb would spend in solitary confinement by presupposing he would be released from administrative

---

[4] On April 30, 2024, Mr. Grubb also sought emergency relief in the form of a preliminary injunction, which was docketed on May 6, 2024. *See* Mot., R.6, PageID # 29.

[5] The district court also recognized but rebuffed a stand-alone "failure to follow prison policy" claim. Op., R.7, PageID # 39.

control in June, if not before. And the district court did not evaluate the duration in conjunction with the harsh conditions Mr. Grubb experienced. Ironically, the district court issued its decision while Mr. Grubb was still in the hole.

In the order accompanying the decision, the district court dismissed the action and certified that "an appeal *in forma pauperis* would be frivolous and therefore would not be taken in good faith." Order, R.8, PageID # 40. The district court did not explain why it refused to allow Mr. Grubb leave to amend when he was a pro se plaintiff provided with such limited space to flesh out his factual allegations.

From the hole, Mr. Grubb filed a timely notice of appeal on June 21, 2024.[6] *See* Not., R.9, PageID # 41. This appeal follows.

---

[6] The Court may take judicial notice that Mr. Grubb remained in the hole until August 2024. *See* Fed. R. Evid. 201(b) ("The court may judicially notice a fact that is not subject to reasonable dispute because it . . . (2) can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned."). Given the prison's own records, there can be no dispute that Mr. Grubb remained in the hole months after his complaint was dismissed.

STANDARD OF REVIEW

This Court reviews the sua sponte dismissal of a complaint under § 1915A de novo. *See Grinter v. Knight*, 532 F.3d 567, 571–72 (6th Cir. 2008). In determining whether dismissal was appropriate, this Court "must construe the complaint in a light most favorable to the plaintiff, accept all the factual allegations as true, and determine whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *Perry v. Michigan Dep't of Corr.*, No. 23-1446, 2023 WL 8593602, at \*2 (6th Cir. Dec. 8, 2023) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Because Mr. Grubb was pro se below, his complaint "is 'to be liberally construed, . . . and must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

# SUMMARY OF THE ARGUMENT

Joshua Grubb languished in solitary confinement for months with no meaningful chance of release, and in fact was still in the hole when the district court dismissed his complaint as frivolous. After trying everything short of litigation to get relief, Mr. Grubb initiated this suit, using the complaint form that the Western District of Kentucky requires pro se prisoners raising § 1983 claims to complete. With only two pages allotted to handwrite his claims, Mr. Grubb described how he was not provided any process that allowed him to petition for his release from solitary confinement in violation of prison regulations. And he explained the dire conditions he faced in the hole, including that he had no hot water and was trapped in a freezing cell in the dead of winter, and was denied video visits and other basic necessities to which he was entitled under prison regulations. As such, Mr. Grubb alleged that the named prison officials violated his constitutional rights.

Screening Mr. Grubb's complaint pursuant to § 1915A, the district court held that Mr. Grubb raised an Eighth Amendment conditions-of-confinement claim and a Fourteenth Amendment procedural due process claim. The court then sua sponte dismissed both claims as frivolous. In so doing, the district court not only failed to construe Mr. Grubb's complaint liberally and draw all reasonable inferences in his favor, but the court also made three distinct legal errors that require reversal.

*First*, the district court erred in its analysis of Mr. Grubb's Eighth Amendment claim. The district court looked at every alleged deprivation individually and held that each alone could not establish an Eighth Amendment violation. But the Supreme Court has commanded courts to assess whether certain conditions, "alone *or in combination*," violate the Eighth Amendment. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981) (emphasis added); *see also id.* at 362–63 (Brennan, J., concurring) ("[A] court considering an Eighth Amendment challenge to conditions of confinement must examine the totality of the circumstances."); *Walker v. Mintzes*, 771 F.2d 920, 925 (6th Cir. 1985) (Supreme Court precedents "require consideration of all the prison's conditions and circumstances, rather than isolated conditions and events, when addressing [E]ighth [A]mendment claims"). The district court did not conduct the analysis that established case law requires. Had it done so, it would have been clear that Mr. Grubb plausibly stated an Eighth Amendment claim.

*Second*, when reviewing Mr. Grubb's Fourteenth Amendment claim, the district court focused solely on the fact that Mr. Grubb (at the time he filed his complaint) had been in solitary less than a year and held that he needed to spend more time in the hole to state a due process claim. This, too, transgressed this Court's case law, which makes clear that a due process claim requires the court to consider "the nature of the more-restrictive confinement *and* its duration" when determining whether a plaintiff alleges a plausible Fourteenth Amendment claim. *Harden-Bey v.*

*Rutter*, 524 F.3d 789, 793 (6th Cir. 2008) (emphasis in original). Contrary to what the district reasoned below, the amount of time in solitary alone is not dispositive, especially here, where the district court unduly undercounted the time Mr. Grubb was forced to spend in the hole.

*Third*, the district court erred in dismissing Mr. Grubb's complaint without first allowing him leave to amend. This Court has declared that dismissal "without leave to amend is not appropriate unless it is clear on de novo review that the complaint could not be saved by amendment." *Newberry v. Silverman*, 789 F.3d 636, 646 (6th Cir. 2015). The district court did not make any such finding here. If Mr. Grubb had more than two pages to state his claims, he would be able to describe in far greater detail the constitutional violations he suffered.

Construing his pro se complaint liberally and applying the correct legal standards, Mr. Grubb stated plausible Eighth and Fourteenth Amendment claims. If this Court disagrees, it should afford him the chance to add details to his allegations by remanding the case to the district court with an order to permit Mr. Grubb to amend his complaint. Either way, this Court should reverse.

# ARGUMENT

## I. The District Court Erred When It Dismissed Mr. Grubb's Eighth and Fourteenth Amendment Claims as Frivolous.

### A. The District Court Reversibly Erred By Concluding Mr. Grubb's Eighth Amendment Claim Was Frivolous.

Upon reviewing Mr. Grubb's complaint, the district court understood that Mr. Grubb was alleging an Eighth Amendment conditions-of-confinement claim based on the conditions he faced in solitary confinement. Op., R.7, PageID # 35. Under the Eighth Amendment, "prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)). Prison officials violate the Eighth Amendment when they are deliberately indifferent to a substantial risk of serious harm to their prisoner. *See Wilson v. Williams*, 961 F.3d 829, 839 (6th Cir. 2020). An Eighth Amendment claim has an objective component: a "prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." *Farmer*, 511 U.S. at 834 (citation omitted) (quotation marks omitted). And a subjective component: the official must "know[ ] of and disregard[ ] an excessive risk to inmate health or safety." *Id.* at 837.

When dismissing Mr. Grubb's complaint, the district court focused on two of Mr. Grubb's allegations. First, the district court focused on the fact that Mr. Grubb

was imprisoned in solitary confinement and held that "absent a showing that basic human needs were not met, the denial of privileges as a result of administrative segregation cannot establish an Eighth Amendment violation." Op., R.7, PageID # 35–36. Then, the district court held that Mr. Grubb being denied "hot water for two months also fail[ed] to state an Eighth Amendment claim." *Id.*, PageID # 36. The district court ignored Mr. Grubb's allegation that it was also "cold at all times in [the] cellhouse," which that plus the cold showers resulted in sickness. Compl., R.1, PageID # 5. And the district court did not mention the fact that Mr. Grubb alleged that defendants were aware of the conditions but did nothing to remedy them. *See id.*

In reviewing each allegation individually, the district court missed the forest for the trees. When Mr. Grubb's allegations are considered in tandem, *see Walker*, 771 F.2d at 925 (mandating that courts consider "all the prison's conditions and circumstances"), he clearly stated a plausible Eighth Amendment claim. It was not just the fact that Mr. Grubb was in solitary confinement that was the basis of his claim. It was that he was in solitary confinement, which was "cold at all times," and on top of that was forced to take cold showers for *months*, *in the winter*, which unsurprisingly made him sick. Beyond that, he was also denied all visitation—in person and video, and other basic necessities that even prisoners in solitary are supposed to have access to. It was this combination of factors together that formed the basis of his

claim, which fits plausibly within the class of Eighth Amendment claims recognized by the Supreme Court and this Court.

Over thirty years ago in *Wilson v. Seiter*, the Court gave an example of what constitutes a prototypical Eighth Amendment claim: "a low cell temperature at night combined with the failure to issue blankets." 501 U.S. 294, 304 (1991). As the Court explained there, the combination of those two factors together would "have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as . . . warmth." *Id.*

Ever since, this Court has consistently held that "the Eighth Amendment may be violated when prison officials let the cold inside, exposing inadequately protected inmates." *Spencer v. Bouchard*, 449 F.3d 721, 728 (6th Cir. 2006), *abrogated on other grounds by Jones v. Bock*, 549 U.S. 199 (2007). And this Court has repeatedly recognized that prisoners state plausible Eighth Amendment claims when they allege that they were continuously exposed to the cold. *See, e.g.*, *Smith v. Bush*, No. 23-1644, 2024 WL 242349, at *2 (6th Cir. Jan. 19, 2024); *Francis v. Altiere*, 491 F. App'x 539, 541 (6th Cir. 2012); *Franklin v. Franklin*, No. 97-4365, 2000 WL 687434, at *4 (6th Cir. May 16, 2000); *Knop v. Johnson*, 977 F.2d 996, 1012 (6th Cir. 1992).[7]

---

[7] Other circuits have similarly held that exposure to cold temperatures can give rise to an Eighth Amendment claim. *See, e.g.*, *Sampson v. Berks Cty. Prison*, 171 F. App'x 382, 385–86 (3d Cir. 2006); *Mitchell v. Maynard,* 80 F.3d 1433, 1443 (10th

This Court's decision in *Spencer* is instructive. Spencer was incarcerated in a Michigan jail from August to February. *See Spencer*, 449 F.3d at 723. In support of his Eighth Amendment claim, Spencer argued that "the state provided inadequate shelter during his pretrial detention by subjecting him to cold, wet conditions." *Id.* at 728. This Court held that Spencer's Eighth Amendment claim could proceed to trial because his evidence was "sufficient to conclude that he lived in cold temperatures *continuously for several months* (including all of December and January) subject only to the occasional relief of an unseasonably warm day." *Id* (emphasis in original). And the evidence showed that the jail officials received complaints of the cold and did nothing about it. *Id.* at 729.

Similarly, here, Mr. Grubb alleged that he was stuck in a cold cell—around the clock given that he was in solitary confinement—during the winter months. And as he alleged, he couldn't even get warm when he bathed, as the water in the showers was cold, too. Being forced to live in the cold with cold showers "presents a risk of physical harm beyond mere inconvenience." *Smith*, 2024 WL 242349, at *2 (reversing a sua sponte § 1915A dismissal). Indeed, there was not just the *risk* of harm. Here, the harm *actually occurred*, as Mr. Grubb alleged that the conditions made him sick.

Cir. 1996); *Gordon v. Faber*, 973 F.2d 686, 687–88 (8th Cir. 1992); *Corselli v. Coughlin,* 842 F.2d 23, 27 (2d Cir.1988); *Lewis v. Lane*, 816 F.2d 1165, 1171 (7th Cir. 1987).

The complete denial of visitation that Mr. Grubb alleged further supported the plausibility of his Eighth Amendment claim. Mr. Grubb alleged that he was denied visitation in violation of the prison's own policies. And as the Supreme Court has said, "[i]f the withdrawal of all visitation privileges . . . were applied in an arbitrary manner to a particular inmate," that may amount to "a cruel and unusual condition of confinement in violation of the Eighth Amendment." *Overton v. Bazzetta*, 539 U.S. 126, 136–37 (2003). Here, the district court did not even consider how this particular depravation factored into and reinforced the plausibility of Mr. Grubb's Eighth Amendment claim. Had it done so, the district court would have recognized that when the conditions Mr. Grubb faced in solitary are considered "in combination," *Rhodes*, 452 U.S. at 347, the allegations in his pro se complaint satisfy the objective component of an Eighth Amendment claim.

Mr. Grubb also alleged facts sufficient to satisfy the subjective prong of an Eighth Amendment claim as he alleged that the prison official defendants knew of this risk of harm he faced and yet did nothing to abate it. The district court did not address this question below. But it is clear that Mr. Grubb's allegations meet the mark, as Mr. Grubb alleged that the "[p]arties have been aware of no hot-water for the last two months and still have refused to have it fixed" even though prisoners were getting sick. Compl., R.1, PageID # 5. He alleged that he told Defendants about the issues and received no meaningful response. *Id.*, PageID # 4–5. And he alleged

that Defendants were purposefully denying visitation despite "the schedule stat[ing] [Mr. Grubb and the other prisoners in solitary were] allowed to have them." *Id.* Given these allegations, Mr. Grubb alleged facts that plausibly show that "Defendants were 'aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists and the Defendants ignored that risk.'" *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 896 (6th Cir. 2004) (quoting *Farmer*, 511 U.S. at 837). These allegations satisfied the subjective component of an Eighth Amendment claim.

Construing his complaint liberally and considering the totality of his allegations, Mr. Grubb stated a plausible Eighth Amendment claim. The district court erred in holding otherwise. This Court should reverse.

### B. The District Court Reversibly Erred By Concluding Mr. Grubb's Fourteenth Amendment Claim Was Frivolous.

The district court also erred when it dismissed Mr. Grubb's Fourteenth Amendment due process claim. "The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). When evaluating a Fourteenth Amendment claim, a court must ask two questions: (1) whether a liberty or property interests exists that has been interfered with by the state; and (2) "whether the procedures attendant upon that deprivation were constitutionally sufficient." *Kentucky*

*Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). In the prison context, a protected liberty interest is implicated when the conditions a prisoner faces impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

The district court dismissed Mr. Grubb's Fourteenth Amendment claim under the reasoning that he did not plausibly allege a deprivation of a protected liberty interest based on his continued detention in solitary confinement. Op., R.7, PageID # 38. In reaching this conclusion, the district court first focused on the amount of time Mr. Grubb had spent in solitary confinement—"from August 2023 until June 2024," and explained that "generally only periods of segregation lasting several years or more have been found to be atypical and significant." *Id.* And then, focusing on Mr. Grubb's allegation that he has been denied visitation, the district court held that this allegation "fails to show that he has suffered an atypical and significant hardship." *Id.*

Again, the district court missed the gravamen of Mr. Grubb's complaint. Mr. Grubb's allegations relating to his due process claim were not just that he lacked access to visitation; it was that *he was in solitary confinement*, because that's what "administrative segregation" is, with all the hardship solitary confinement entails. A "robust body of legal and scientific authority recogniz[es] the devastating mental

health consequences caused by long-term isolation in solitary confinement." *Pala-kovic v. Wetlze*, 854 F.3d 209, 225 (3d Cir. 2017). To be sure, "near-total isolation exact[s] a terrible price." *Davis v. Ayala*, 576 U.S. 257, 289 (2015) (Kennedy, J., concurring). And "prolonged solitary confinement produces numerous deleterious harms." *Glossip v. Gross*, 576 U.S. 863, 926 (2015) (Breyer, J., dissenting). Several courts have therefore recognized that a prisoner can state a plausible due process claim based on being held in solitary confinement (or "administrative segregation"). *See, e.g.*, *Harden-Bey*, 524 F.3d at 793 (collecting cases).

The district court implicitly recognized this when it focused on the time Mr. Grubb had spent in solitary. But in focusing on how long Mr. Grubb had spent in solitary confinement, the district court made two errors. First, this Court has made clear that when "deciding whether changes to an inmate's conditions of confinement implicate a cognizable liberty interest," courts must consider "the nature of the more-restrictive confinement *and* its duration in relation to prison norms and to the terms of the individual's sentence." *Id.* at 792 (emphasis in original). While the amount of time one spends in segregation is a relevant factor, it is not the only factor that courts must consider when deciding whether a prisoner has been deprived of a protected liberty interest. *See id.* At a minimum, a court must consider the conditions of solitary confinement as compared to the conditions in general population. *Finley v.*

*Huss*, 102 F.4th 789, 814 (6th Cir. 2024) ("Whatever the 'ordinary incidents of prisons life' may encompass . . . they must be decided with reference to the particular prison system at issue, and can only be truly 'ordinary' when experienced by a significant portion of the prison population.") (cleaned up).[8]

In contravention of this Court's precedents, the district court did not discuss the conditions Mr. Grubb faced in solitary confinement, other than noting the fact that he was denied video visits. And the district court did not compare the conditions Mr. Grubb faced in solitary against the conditions in general population. Based on Kentucky's own prison regulations, which Mr. Grubb cited in his motion for a preliminary injunction, *see* Mot., R.6, PageID # 29, prisoners in general population have access to recreational opportunities and gym facilities.[9] They are permitted "a minimum of eight (8) hours per month" total of in-person and video visits.[10] They have

_____

[8] And even if the court could focus only on the amount of time Mr. Grubb spent in solitary, as the First Circuit recently explained, "at least when the solitary confinement that grounds an inmate's procedural due process claim exceeds thirty days, that confinement will constitute an 'atypical and significant hardship' . . . if, in relation to the reason for that confinement, it is irrational, inessential, or excessive in duration." *Perry v. Spencer*, 94 F.4th 136, 154 (1st Cir. 2024) (cleaned up). Therefore, even the sheer time that Mr. Grubb spent in solitary confinement can suffice to show an atypical and significant hardship given that he alleged that his placement there was arbitrary and "unreasoned." *Id.*

[9] Kentucky Correctional Policy and Procedures, *Recreation and Inmate Activities*, 22.2, available at https://corrections.ky.gov/About/cpp/Documents/22/CPP%2022.2.pdf.

[10] Kentucky Correctional Policy and Procedures, *Inmate Visits*, 16.1, available at https://corrections.ky.gov/About/cpp/Documents/16/CPP%2016.1%20Effective%205-15-24%20LRC.pdf.

access to a range of religious programming.[11] And they have access to the canteen, from which they can buy food, clothing, and basic hygiene products.[12] By contrast, Mr. Grubb alleged that he did not receive the basic necessities that even those in solitary were supposed to have access to *on top of* being locked in his freezing cell around the clock. Compl., R.1, PageID # 5.

Beyond that, drawing all inferences in Mr. Grubb's favor, it is highly unlikely that prisoners in general population are confined to their freezing cells all day; are forced to take cold showers; are so limited in the items they can possess and then are even denied those; and are only allowed video visits that the prison refuses to provide.[13] These allegations, when considered together, plausibly allege an atypical and significant hardship necessary to state a plausible due process claim. *See Finley*, 102

---

[11] Kentucky Correctional Policy and Procedures, *Religious Programs*, 23.1, available at https://corrections.ky.gov/About/cpp/Documents/23/CPP%2023.1%20Eff%204-4-23.pdf; *see also* Kentucky Department of Corrections Religion Reference Manual, available at https://corrections.ky.gov/About/Documents/LRC%20Filings/2021/Religion%20Reference%20Manual%206%20080%20eff%204-4-23.pdf.

[12] Kentucky Correctional Policy and Procedures, *Inmate Personal Property*, 17.1., available at https://corrections.ky.gov/About/cpp/Documents/17/CPP%2017.1.pdf.

[13] In addition to the obvious pain that people feel when separated from their family and the compounding effect such deprivation has on isolation, the Supreme Court has repeatedly recognized that family relationships, which are impeded by the complete deprivation of visits, are sacrosanct and encompass "rights sheltered by the Fourteenth Amendment." *M.L.B. v. S.L.J.*, 519 U.S. 102, 116 (1996); *see, also, e.g.*, *Moore v. City of East Cleveland*, 431 U.S. 494, 499 (1977).

F.4th at 815 (the factors "'taken together' . . . amount to an atypical and significant hardship"). The district court erred in concluding otherwise.

Second, the district court, in calculating how much time Mr. Grubb would be forced to spend in administrative segregation, failed to construe his complaint liberally and draw all reasonable inferences in his favor. The district court dismissed Mr. Grubb's Fourteenth Amendment claim mainly because he alleged in his complaint that he was projected to be released in June 2024. Op., R.7, PageID # 38. But while that was the release date Mr. Grubb said he was provided, he also alleged that the prison officials are "forcing inmates to do longer periods of hole time" than required, and keeping people "in the hole/segregation for up to a year or more." Compl., R.1, PageID # 5. As proof of this, Mr. Grubb alleged that his last release date came and went, and he was still in solitary. *Id.*, PageID # 4. And he alleged that prison officials were violating the regulations and not providing people in administrative segregation with any meaningful review process to petition for release. *Id.*, PageID # 4–5. Therefore, construing his complaint liberally, Mr. Grubb did *not* allege that he would *necessarily* be released by June 2024 (and in fact he was not released then). Rather, his complaint should be read to allege something closer to an "indefinite placement in administrative segregation," which "is atypical and significant so as to confer upon him a liberty interest." *Thomas-El v. Smith*, No. 23-1304, 2024 WL 1023749, at *3 (6th Cir. Mar. 6, 2024).

Construing Mr. Grubb's complaint liberally and drawing all reasonable inferences in his favor, Mr. Grubb stated a plausible deprivation of a protected liberty interest in violation of his Fourteenth Amendment rights. The district court erred in concluding otherwise. This Court should reverse.

## II. The District Court Erred When It Dismissed Mr. Grubb's Complaint Without First Allowing Him Leave to Amend.

Finally, if this Court does not find that Mr. Grubb's year plus in the hole and the attendant freezing, wet, sickly, and isolated conditions plausibly state a claim, then it should reverse the district court's incorrect and unexplained decision to dismiss the complaint without first allowing Mr. Grubb leave to amend. *See* Op., R.7, PageID # 32; Ord., R.8, PageID # 40. Consistent with "the well-established preference for allowing claims to be decided on their merits where possible," *Burkeen v. A.R.E. Accessories, LLC*, 758 F. App'x 412, 416 (6th Cir. 2018) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)), this Court has made clear that dismissal "without leave to amend is not appropriate unless it is clear on de novo review that the complaint could not be saved by amendment." *Newberry*, 789 F.3d at 646 (citation omitted). The district court did not and could not make any such finding here, and its decision to dismiss the complaint without allowing leave to amend goes against this Court's "emphas[is] that the case law in this Circuit manifests 'liberality in allowing amendments to a complaint.'" *Id.* at 645 (quoting *Janikowski v. Bendix Corp.*, 823 F.2d 945, 951 (6th Cir. 1987) (cleaned up)); *see also* Charles A. Wright & Arthur R.

Miller, *Federal Practice and Procedure* § 1483 (3d ed., June 2024 update) ("[I]f it is at all possible that the party against whom a dismissal is directed can correct the defect in the pleading or state a claim for relief, the court should dismiss with leave to amend.").[14]

That Mr. Grubb's complaint was dismissed pursuant to frivolity screening under the PLRA does not change the analysis. *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013) ("[U]nder Rule 15(a) a district court can allow a plaintiff to amend his complaint even when the complaint is subject to dismissal under the PLRA."); *see also Jones*, 549 U.S. at 214. Instead, consistent with the liberal treatment afforded to pro se plaintiffs, this Court has recognized that district courts should afford those without counsel special consideration when granting leave to amend. *See Berndt v. Tennessee*, 796 F.2d 879, 882 (6th Cir. 1986); *accord Rashada v. Fagel*, No. 23-1674, 2024 WL 1367436, at *4–5 (6th Cir. Apr. 1, 2024); *Brown v. Matauszak*, 415 F. App'x 608, 614–15 (6th Cir. 2011).

That principle is especially pronounced where, as here, a pro se plaintiff is provided with little room to detail his factual allegations. Here, Mr. Grubb's pro se

---

[14] Allowing a plaintiff to amend his complaint is also consistent with the spirit and text of the Federal Rules of Civil Procedure. Indeed, in the ordinary course of pleading, "[a] party may amend its pleading once as a matter of course," within 21 days of serving it or 21 days after being served with a responsive pleading, or motions to dismiss, motions for a more definitive statement, or motions to strike. Fed. R. Civ. P. 15(a)(1).

complaint was written on a court-required form that provided him fewer than two pages to state the facts of his case, to explain how his rights were violated, to detail how each Defendant violated his rights, and to list the dates when each event took place. Compl., R.1, PageID # 4–5. Even with such limited space, there is no question that Mr. Grubb suffered real harms. There is nothing frivolous about what he has experienced in the hole. *See id.*; *see also supra* at pp. 2–4. Surely, if Mr. Grubb had more space, he would have been able to describe in even greater detail the factual allegations underlying his constitutional claims. Indeed, Mr. Grubb's use of the space below the allotted lines demonstrates that he had more to say than the 14 paragraphs of facts that he managed to pack into the limited space provided.

Given Mr. Grubb's pro se status, the very real harms he pleaded, the limited space he was provided to detail those harms, and his unceasing efforts to be heard from the hole, "justice . . . requires" that he have a chance to amend his complaint. Fed. R. Civ. P. 15(a)(2).[15]

---

[15] The district court's order does not specify whether the dismissal was with or without prejudice. *See* Ord., R.8, PageID # 40. Therefore, this Court could alternatively affirm "with the clarification that [Mr. Grubb's complaint] is dismissed without prejudice." *Palmer v. Million*, 208 F.3d 214, 2000 WL 125874, at *2 (6th Cir. 2000).

CONCLUSION

For these reasons, Mr. Grubb respectfully requests that this Court reverse the

decision below and remand for further proceedings.

Respectfully submitted,

_____
Daniel S. Harawa
Adam B. Murphy
New York University School of Law
Federal Appellate Clinic
245 Sullivan Street, Fifth Floor
New York, NY 10012
(212) 998-6420
Daniel.Harawa@nyu.edu

Samuel Weiss
Rights Behind Bars
1800 M Street, N.W.
Washington, DC 20001

*Counsel for Appellant*

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-face volume limitation of Rule 32(a)(7)(B)(i) of the Federal Appellate Rules of Procedure. According to Microsoft Word, the word processing program used to prepare this brief, this brief contains 5,832 words.

_____
Daniel S. Harawa

## CERTIFICATE OF SERVICE

I certify that on November 18, 2024, I electronically filed a copy of the foregoing Brief of Petitioner-Appellant with the Clerk of Court through the Court's electronic filing system. No opposing party appeared in the court below upon whom service could be affected.

_____
Daniel S. Harawa

## DESIGNATION OF RELEVANT COURT DOCUMENTS

| Description of Entry | Date | Record Entry No. | Page ID No. Range |
|---|---|---|---|
| Pro Se Complaint | April 19, 2024 | 1 | 1-9 |
| Memorandum Opinion | May 29, 2024 | 7 | 32-39 |
| Order of Dismissal | May 29, 2024 | 8 | 40 |
| Notice of Appeal | June 21 , 2024 | 9 | 41-42 |